# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOHN ANTONIO EVANS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1629 (RMC)** |
| | ) | |
| **WASHINGTON METROPOLITAN** | ) | |
| **AREA TRANSIT AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

John Antonio Evans seeks to hold the Washington Metropolitan Area Transit Authority liable for injuries he received when he crashed his motorcycle into the back of an automobile, was flipped off the bike into the street, and run over by a Metro bus. At the close of discovery, WMATA filed a motion to dismiss and/or for summary judgment, which the Court granted in part but denied otherwise without prejudice awaiting a *Daubert*[1] hearing on Mr. Evans' expert witness, David Stopper. That hearing having been held, the Court concludes that Mr. Stopper's testimony is admissible within appropriate limits. It also finds that Mr. Evans has alleged a theory of negligence against WMATA and is not required to rely solely on the theory of "last clear chance" but may introduce evidence to counter WMATA's defense of contributory negligence.

## I. FACTS

As described by Mr. Evans' lawyer:

This case arises from a January 4, 2007 accident in which a WMATA

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

> bus struck plaintiff John Antonio Evans.  Prior to the accident, Evans
> had been operating a motorcycle southbound in the 2700 block of
> Martin Luther King Avenue, S.E., Washington, D.C.  His motorcycle
> struck a car which was making a left-hand turn from the left lane.
> Plaintiff was thrown off his motorcycle into the roadway.   A
> WMATA bus in the right lane came along and ran over the plaintiff,
> causing extensive de-gloving injuries to his left leg and buttocks.

Pl.'s Mem. on Admissibility of Expert Testimony ("Pl.'s Mem.") [Dkt. # 43] at 1.  *See* Compl. ¶ 2

("Plaintiff struck a passenger car which was stopped to make a left turn.").   In its motion for

summary judgment, WMATA argued that the Court should put aside the testimony of Daysha Smith

and Niaya White, pedestrians at the site of the accident, because it is undermined by credible

evidence or physical impossibility.  Def.'s Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply")

[Dkt. # 34] at 7.  WMATA also argued that Mr. Stopper's accident reconstruction is lacking in a

sufficient evidentiary basis to be accepted as expert testimony because he relied solely upon these

two witnesses' accounts.  *Id.* at 15-16.

## II.  LEGAL STANDARDS

Federal Rule of Evidence 702 governs expert testimony.  It provides:

> If scientific, technical or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.  The presumption under the Federal Rules is that expert testimony is admissible.

*Daubert*, 509 U.S. at 588; *Nimely v. City of New York*, 414 F.3d 381, 395 (2d. Cir. 2005) ("It is a

well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert

opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye v. United States*.") (citing *Daubert*, 509 U.S. at 588); Fed. R. Evid. 702 Advisory Committee Note (2000) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."). Nonetheless, Federal Rule of Evidence 702 imposes a "special obligation upon a trial judge" to ensure that expert testimony is not only relevant, but reliable. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

In *Daubert*, the Supreme Court established the trial court's obligation to exercise a "gatekeeping" function, 509 U.S. at 589, which is done in the first instance by "examining the expert's qualifications." *McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 30, 35 (D.D.C. 2004). *Kumho Tire* makes clear that this function extends to all expert testimony, not just that from scientists. Mr. Stopper's qualifications are not at issue here so the Court's "gatekeeping" function is to determine whether his methodology was both reliable and relevant. *Daubert*, 509 U.S. at 597. Testimony from an expert is relevant if it would be helpful to the jury and aid the jury in resolving a factual dispute. *Daubert*, 509 U.S. at 592-93. The method of determining reliability of proffered expert testimony is within the discretion of the trial court. *Kumho Tire*, 526 U.S. at 152. Trained experts commonly extrapolate from existing data, but the court will not admit "opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## III. ANALYSIS

### A. Nature of the Proffered Testimony

WMATA agrees that Mr. Stopper is an expert in accident reconstruction and does not challenge his background, education or experience. Rather, it asserts that Mr. Stopper relied solely

upon the two pedestrians whose versions of events could not be physically correct.  At the *Daubert* hearing, Mr. Stopper explained that the pedestrians gave a description of the motorcycle hitting the automobile and projecting Mr. Evans into the roadway in much the same way as did a driver immediately behind the motorcycle, who clearly saw it.  From this, he deduced that the pedestrians could actually *see* the event and that the bus was not blocking their view.  He therefore concluded that the bus driver had the opportunity to avoid running over Mr. Evans.  Mr. Stopper said he considered all the witnesses who gave statements or were deposed, but only the pedestrians place the bus potentially far enough away from where Mr. Evans landed in the roadway for the bus driver to have avoided the accident.

Mr. Stopper's expert report contains his opinions that:  (1) "it is most likely the bus was still north of the collision site when Mr. Evans was ejected and came to rest in the traffic lanes;" (2) the bus operator "would have first observed the collision of the motorcycle into the rear of the Subaru Outback and the motorcycle operator's ejection from the motorcycle over the top of the automobile;" and the bus operator "should have observed the prone body of Mr. Evans lying in the roadway next to the Subaru from his elevated position in the driver's seat of the Metrobus."  Def.'s Mot. for Discovery [Dkt. # 23], Ex. 2 (January 26, 2009 Report of David Stopper ("Stopper Report")) at 5-7.  Further, Mr. Stopper opined that the bus operator "failed to keep a proper lookout and failed in his duty to avoid hazards in the roadway ahead."  *Id.* at 7.  Finally, he concluded that "the accident where [the bus driver] in the WMATA bus ran over Mr. Evans was a preventable accident . . . ."  *Id.*

WMATA complains that Mr. Stopper's report provided no analysis of the witnesses' testimonies as they pertained to his conclusions and that he did not scientifically test or account for

the bus driver's perception-response times.  Def.'s Mem. on Admissibility of Expert Testimony ("Def.'s Mem.") [Dkt. # 44] at 6-7.  The only basis for Mr. Stopper's opinions reflected in his report is that the sequence of events — rear-end impact, Mr. Evans flung forward of the Subaru, and his being in position for the bus to run over him — could not have happened in the 1.045 to 0.784 seconds it would take for the bus to travel 23 feet (the distance between its front and rear axles).  Mr. Stopper does not say how far Mr. Evans was in front of the bus, although he estimates that he was thrown 17-18 feet before he came to rest (that being the length of the Subaru plus two feet).  Stopper Report at 5.

WMATA makes two essential complaints about relying on the pedestrian witnesses: first, that one reports that they both walked into the street to aid Mr. Evans *before* the bus struck him, although no one else observed that and they would have been hit by the bus had they actually gone into the street at that time; and second, from the sidewalk neither witness could possibly have seen the bus tires on the other side of the bus as it ran over Mr. Evans.  WMATA argues that their testimony is too incredible to be allowed before the jury and that Mr. Stopper's reliance on it is fatal to his report.

The questions the Court must consider are whether Mr. Stopper's testimony is reliable and relevant and whether it would assist the jury to determine one or more questions of fact.  It has long been the law in this Circuit that "where the jury is just as competent to consider and weigh the evidence as is an expert witness and just as well qualified to draw the necessary conclusions therefrom, it is improper to use opinion evidence for the purpose."  *Henkel v. Varner*, 138 F.2d 934, 935 (D.C. Cir. 1943).  Mr. Stopper repeatedly explained that his conclusions were based on "a preponderance of the evidence," but that determination is clearly one for the jury to make.

Certainly Mr. Stopper's knowledge of the length, width, weight, and axle differences on this kind of bus would be admissible as expert knowledge.  However, Mr. Stopper's conclusion that the bus was farther away from the Subaru than the bus driver, Subaru driver, and following-car driver said was based on the similarity between the pedestrians' description of the motorcycle/Subaru part of this accident and the description given by the driver of the following car, and their estimates of how much time passed.  In other words, he credited the pedestrians based upon the written record. Weighing conflicting testimony after an accident may be a normal part of a reconstruction expert's duties but it is not scientific and, in this case, does not rely on Mr. Stopper's expertise.  No "specialized knowledge" of Mr. Stopper's contributed to his conclusion that if the pedestrians saw the motorcycle strike the Subaru, the bus could not have been between them and the car, and the jury is perfectly capable of resolving this factual issue without his opinion.  Should the pedestrians testify, Mr. Evans' lawyer can make the argument that, based on their testimony, the bus must have been in a particular location.  Having Mr. Stopper testify to those facts would not be helpful to the jury but would supplant it.

Similarly, Mr. Stopper may testify about how long it would take the bus to travel a certain distance at a certain speed but he will not be permitted to opine whether that time-frame would be "enough" for all events to have happened.  That, too, is something for the jury to determine and the lawyers to argue.

*After* the pedestrians testify, Mr. Stopper could respond to hypothetical questions posed by Mr. Evans' counsel, such as:  "If the jury finds that the bus was at X, as the pedestrians indicated, and it was going 15-20 miles per hour, how much time would the driver have had to stop?"  Counsel cannot *assume* the pedestrians will be credited by the jury as he frames his

questions, because that would amount to argument which must be reserved until the end of the trial.

### B.  Adequacy of Stopper Report

WMATA contends that Mr. Stopper's report does not satisfy the strictures of Federal Rule of Civil Procedure 26 because he impermissibly expressed "the basis and reasons" for his opinions in greater detail at the *Daubert* hearing than in his report.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i).  WMATA argues that an expert report must be sufficiently complete that no deposition of the expert should be needed to prepare to cross examine him.  Mr. Evans retorts that WMATA had the opportunity to depose Mr. Stopper to explore the bases for his conclusions and chose to truncate it to less than one hour.

While Mr. Stopper's report is brief, the Court would not limit his testimony as WMATA desires.  His *opinions* — some of which are the provenance of the jury — are all in the report and WMATA had the opportunity to depose Mr. Stopper to examine more fully the bases for his opinions.  *See Caldwell v. District of Columbia*, 201 F. Supp. 2d 27, 39 (D.D.C. 2001); *see also Minebea Co. v. Papst*, 231 F.R.D. 3, 8 (D.D.C. 2005) (noting that had plaintiff's expert testified at trial, he "would have been permitted a certain degree of latitude with respect to the areas in which he has been accepted as an expert as permitted to expand upon and explain the opinions and conclusions in his expert report and at deposition").  The amendments to Rule 26 do not state that depositions should no longer be necessary; the closest mention to anything of that sort comes in the 1993 amendments to the Rule, which state: "Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition." Fed. R. Civ. P. 26(a)(2), 1993 Amendments.  A deposition would fill in any gaps to better understand

an expert's report, as it is intended to do.

### C. Contributory Negligence

In his Complaint, Mr. Evans acknowledges that he was driving his motorcycle when it struck the back of the Subaru. *See* Compl. ¶ 2 ("Plaintiff struck a passenger car which was stopped to make a left turn."). District of Columbia Municipal Regulations state: "In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the street or highway in compliance with legal requirements and the duty of all persons to use due care," D.C. Mun. Regs. tit. 18, § 2200.4, and "[t]he driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the roadway." *Id.* § 2201.9. Additionally, the D.C. Court of Appeals has found that "[w]here a lawfully stopped vehicle is struck by another car from the rear, there is a rebuttable presumption that the approaching vehicle was negligently operated." *Fisher v. Best*, 661 A.2d 1095, 1099 (D.C. 1995).

WMATA argues that in acknowledging that his motorcycle struck the Subaru from behind, Mr. Evans has conceded his negligence. In fact, he has done no such thing. Although Mr. Evans admits that he ran into the stopped vehicle, the Complaint does not give any reasons for the collision. Mr. Evans may not now argue that his collision with the Subaru was the result of any negligence on the part of the WMATA bus driver, as the Complaint did not put WMATA on notice of this theory of liability. He may, however, rebut the presumption of his own negligence resulting from his rear-end collision with the Subaru by offering evidence that the actions of a third party — specifically, the driver of the Subaru — led to the collision. Such evidence would not alter the theory of the complaint — that is, that the bus driver was negligent in running over Mr. Evans,

regardless of how the latter ended up in the street.  *See* Compl. Count 1 (Negligence) ¶ 8.

WMATA further argues that Mr. Evans did not allege a theory of negligence against it, but only a theory that WMATA had the "last clear chance" to avoid striking Mr. Evans.   The Complaint states:

> WMATA's bus driver committed by [sic] the following negligent acts and omissions: the failure to keep a proper lookout for the Plaintiff at a time that the bus driver became aware that an accident had occurred; the failure to check the left side mirror to observe the Plaintiff who was there to be seen; the failure to stop the bus and keep it stopped until the Plaintiff was clear of the bus; the failure to remain alert and observant for potential danger; the violation of WMATA Standard Operating Procedures; and the violations of the standard of care applicable to common carriers such as the WMATA.

*Id.*  It then states "[t]hat as a direct and proximate result of the negligent acts and omissions of the Defendant WMATA's bus driver, Plaintiff sustained serious bodily injuries . . . ." *Id.* ¶ 9.  Thus, Mr. Evans has clearly alleged a cause of action for negligence, as well as elements upon which a jury could find that, even if Mr. Evans were contributorily negligent, the WMATA bus driver had the "last clear chance" to avoid the accident.[2]

---

[2]  The elements of the "last clear chance" doctrine under D.C. law are

> (1) that plaintiff was in a position of danger caused by negligence of both plaintiff and defendant; (2) that the plaintiff was oblivious of the danger or unable to extricate himself from the position of danger; (3) that defendant was aware, or by the exercise of reasonable care should have been aware of the plaintiff's danger and obliviousness or inability to extricate himself from the danger; and (4) the defendant with means available to him was by the exercise of reasonable care able to avoid striking plaintiff after he became aware of the latter's danger and inability to extricate himself from danger, and failed to do so.

*Queen v. Wash. Metro. Area Transit Auth.*, 842 F.2d 476, 481 (D.C. Cir. 1988).

**IV. CONCLUSION**

The Court will allow Mr. Stopper to testify within the limits described above.

Furthermore, the Court will allow Mr. Evans to present evidence to rebut the presumption of his

negligence resulting from his rear-end collision with the Subaru.   A memorializing Order

accompanies this Memorandum Opinion.


Date:   December 16, 2009                                      _____/s/_____

                                                                                 ROSEMARY M. COLLYER
                                                                                 United States District Judge