IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN ANTONIO EVANS** | : |
| | : |
| Plaintiff, | : |
| | : Case No. 1:08-cv-01629-RMC |
| v. | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| Defendant. | : |
| | : |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' THIRD MOTION IN LIMINE AND AND MOTION FOR CONTINUANCE**

Plaintiff, John Antonio Evans, by undersigned counsel, opposes the defendant Washington Area Transit Authority's ("WMATA") third motion in limine and motion to continue the trial date [51].

Plaintiff's opposition is made upon the following grounds:

1. The expert opinion of David Will, M.D., as set forth in his supplemental report dated December 17, 2009, has been disclosed in sufficient time to prevent prejudice to the defendant. Additionally, there is no unfair surprise to the defendant because Dr. Wills' report does not radically differ from the opinions expressed by the defendant's doctor who conducted an IME examination of the plaintiff in September 2009. Plaintiff was liberal with the defendant when it wanted consent for an extension to identify its experts and to extend the time for an IME examination. Plaintiff would also note that plaintiff's treatment was ongoing in 2009.

2. The defendant complains that it would do more discovery on the plaintiff's claims of future medical needs and future wage loss if a continuance is granted. But plaintiff identified expert witnesses on such damages and the defendant never deposed any of them. It is doubtful

that the defendant would learn anything in discovery it could not have learned by deposing these experts earlier.

3. Defendant contends that the problem with the plaintiff's left knee is new and for that reason should be excluded. But the disclosure of the knee problem is not new; it was disclosed early in discovery.

4. Plaintiff has identified the amount and identity of the majority of medical bills by way of answer to interrogatory. Some bills may have been omitted, but the prejudice to the defendant is slight. The large bills of the hospitals and attending/surgeons were provided and/or identified in advance. This claim will be addressed more fully in plaintiff's response to the defendant's second motion in limine.

5. The parties have devoted considerable expense and time in preparing for trial. A continuance of the trial would prejudice the plaintiff.

                        /s/
Terrell N. Roberts, III, #965061
Attorney for Plaintiff
6801 Kenilworth Avenue, Suite 202
Riverdale, MD 20737
(301) 699-0764
E-mail: troberts@robertsandwood.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing opposition of the plaintiff, John Evans, to the motions in limine and motion for continuance, together with a memorandum of law and attachments, was mailed this 28th day of December, 2009 to:

>Nicholas S. Nunzio, Jr. #362578
>Assistant General Counsel-WMATA
>600 5th St., N.W.
>Washington, D.C. 20001

>_____/s/_____
>Terrell N. Roberts, III

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN ANTONIO EVANS** : | |
| : | |
| Plaintiff, : | |
| : | Case No. 1:08-cv-01629-RMC |
| v. : | |
| : | |
| **WASHINGTON METROPOLITAN** : | |
| **AREA TRANSIT AUTHORITY** : | |
| : | |
| Defendant. : | |
| : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT WMATA'S THIRD MOTIONS IN LIMINE AND MOTION FOR CONTINUANCE**

Plaintiff, John Antonio Evans, by undersigned counsel, opposes the defendant Washington Area Transit Authority's ("WMATA") motions in limine and motion to continue the trial dated and submits the following memorandum of law in support.

**I. The Admission of the testimony of Dr. David Wills Is Not A Matter of Surprise to the Defendant, Because His Supplemental Report Merely Updated His Initial Report and the Information in the Report is Essentially Consistent with the Defendant's IME Report.**

The opinions and findings of David Will, M.D., as set forth in his supplemental report dated December 17, 2009, should not be excluded because they do not prejudice the defendant.

In February 2009, plaintiff timely designated Dr. Wills as an expert and furnished his report. In that report, Dr. Wills addressed the plaintiff's future medical and psychological needs. He recommended surgery to correct a severe deformity of the left foot and to reverse a colostomy. As the defendant points out, this has been done. But Dr. Wills also made other

4

recommendations in his initial report. He recommended medication and pain management, physical therapy and psychological support to address sexual dysfunction and disfigurement. [Doc 46, Ex. 2, p. 2.]

Dr. Wills' examination of the plaintiff took place on October 24, 2008. It is a fact that after that date, plaintiff had further treatment to correct his left foot deformity and to reverse a colostomy. Dr. Bradley Lamm corrected the left foot deformity by placing the plaintiff in an external steel frame called a Taylor Spatial Frame. He progressively made adjustments to the frame. Treatment commenced in February 2009 and was not completed until October 2009.[1] Plaintiff provided defendant with copies of Dr. Lamm's notes which covered the treatment. In addition, Dr. Brajendra Misra performed surgery in July 2009 to reverse the colostomy. The defendant was kept apprised of these treatments.

Dr. Wills's December 17, 2009 supplemental report discussed the plaintiff's ongoing need for physical therapy, medication and pain management, and psychological therapy. [51, ex. 1.] His report discusses his examination of the plaintiff. Dr. Wills noted the plaintiff's swollen left leg and discoloration of the foot and ankle. He noted limitations of flexion to the foot and knee (left). He also noted that the plaintiff had "signs and symptoms of a complex regional pain syndrome involving the left foot ankle. He noted that his recommendation for pain medications remain the same, except he would add Oxycontin in daily doses. As before he recommended psychological support and therapy.

The findings of Dr. Wills are no surprise to the defendant based upon the findings of its

---

[1] Plaintiff's counsel can attest to the fact that plaintiff had difficulty finding a doctor who was willing to undertake the surgery based upon the fact that plaintiff had no health insurance but was covered by Medicaid in Maryland.

own expert, Edward G. Magur, M.D.  Dr. Magur examined the plaintiff on September 16, 2009.. See Attachment #1.  His report stated that he considered "Mr. Evans' prognosis for return to full function very guarded."  He noted that Mr. Evans had "chronic pain and swelling of his lower extremity."  He also stated: "His dependent edema, which is secondary to his extensive trauma, as well as venous and lymphatic insufficiency are not likely to improve significantly with time."  Dr. Magur stated that it was not likely that the plaintiff would be able to return to work as a barber, inasmuch "patient's inability to stand due to dependent swelling, pain, and loss of sensation in the bottom of the foot is going to limit that."

Although Dr. Magur's report does not address the plaintiff's future medical and medication needs, Dr. Magur's report did not take issue with Dr. Wills' recommendations in that regard.  (Dr. Magur acknowledged in his report that he reviewed Dr. Wills' report.)   In sum, the admission of Dr. Wills' testimony will not prejudice the defendant's case.

The defendant argues for a continuance of the trial date to permit an additional Rule 35 examination of the plaintiff in order to assess future needs and to conduct further discovery.   It is questionable at best whether such an examination is necessary.  Plaintiff's condition is not substantially different from what it was on September 16, 2009.  As Dr. Wills' report attests, plaintiff's left leg remains swollen and edematous and that is not likely to change.

However, if a Rule 35 examination is deemed necessary, it can be accomplished without a continuance of the trial date.  The plaintiff will consent to the examination being conducted now, because there is sufficient time between now and the trial to complete the examination.

**II.     Plaintiff's Future Medical Care and Future Lost Wage Claims Are Properly Supported by Expert Testimony.**

Plaintiff's claims for future medical care costs and future lost wages are documented in in earlier reports of Dr. Estelle Davis and Dr. Richard Lurito and the initial report of Dr. David Wills. See Exhibits 2, 3, and 4 attached to the defendant's motion in limine. [46] Defendants have made no showing to support their contention there is "no expert source or calculation" for claimed medication, physical therapy and psychological counseling.

III. **Evidence of Build-Up of Ossification in the Plaintiff's Left Knee is Not New Information and Should Not Be Excluded as Evidence.**

Defendant argues for excluding evidence of hyperossification of the plaintiff's left knee and the surgery done to remove it. It alleges that disclosure of this information is *new* and is made at the last minute. In fact, plaintiff disclosed the problem with his left knee early in the case. Early on plaintiff furnished the defendant with copies of the records of the plaintiff's admission to the National Rehabilitation Hospital. One of the diagnoses made in the Discharge Summary dated June 1, 2007 was "left knee hyperossification." Furthermore, by letter dated September 9, 2009, plaintiff provided copies of the records of Dr. Bradley Lamm covering the inception of his treatment of the plaintiff in February 2009 through August 18, 2009. Dr. Lamm's February 4, 2009 note makes a diagnosis of "hypertrophic ossification, left knee." Finally, Dr. Magur, the defendant's doctor, examine x-rays of the plaintiff on September 16, 2009 and noted "ossification along the medial aspect of the knee just outside of the joint line along the course of the medial collateral ligament." Thus, the diagnosis of hyperossification of the plaintiff's left knee was not new to the defendant. It is true that Dr. Janet Conway did not operate on the plaintiff's left knee until December 14, 2009. However, that is something which could not be helped. The facts are that there was a build up of ossification in the left knee and

Dr. Conway removed it. Those facts hardly warrant excluding the diagnosis or treatment of the left knee condition. Nor does it warrant a continuance.

**IV.     A Continuance At This Late Stage Would Prejudice the Plaintiff.**

Defendants' argues that it will suffer "severe prejudice" if the case goes forward to trial. However, the claim of prejudice does not bear scrutiny. Defendant does not need to repeat a Rule 35 examination of the plaintiff, because the plaintiff's condition is not substantially different than it was on September 26, 2009. If such an examination is warranted, it can be done now without moving the trial date. Additionally, the claims of surprise and prejudice with respect to the condition of the plaintiff's left knee are somewhat exaggerated. Finally, defendant has not suffered any real prejudice if Dr. Wills testifies in accordance with his supplemental report. Dr. Wills' opinions as to the plaintiff's future needs for physician care, medications and psychological support are not materially different from his first report. Also, the defendant's IME report did not take issue with Dr. Wills' assessment of such needs.

                                                  /s/
                                  Terrell N. Roberts, III,
                                  Attorney for Plaintiff
                                  6801 Kenilworth Avenue, Suite 202
                                  Riverdale, MD 20737
                                  Telephone: (301) 699-0764
                                  Facsimile: (301) 699-8706
                                  E-mail:  troberts@robertsandwood.com