IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN ANTONIO EVANS**, | : |
| | : |
| Plaintiff, | : |
| | : Case No. 1:08-cv-01629-RMC |
| v. | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY**, | : Trial: January 11, 2010 @ 9:30 a.m. |
| | : |
| | : Pretrial: January 6, 2010 @ 10:00 a.m. |
| Defendant. | : |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S OMNIBUS REPLY TO PLAINTIFF'S OPPOSITIONS TO DEFENDANT'S MOTIONS IN LIMINE**

Defendant Washington Metropolitan Area Transit Authority ("WMATA") respectfully submits the following Omnibus Reply to Plaintiff's Oppositions to Defendant's Motions In Limine:

**A.   INTRODUCTION**

On April 2, 2009 or approximately nine months ago, this Court scheduled this matter for trial on January 11, 2010 and a Pretrial Conference on January 6, 2010. In the last three weeks, defendant has issued subpoenas *ad testificandum* to fact witnesses and made arrangements for its expert witnesses, whose Rule 26(a)(2)(B) reports have been a matter of this Court's record since October 28, 2009, to personally appear at the trial of this case. Defendant is preparing for trial

On the other hand, plaintiff is preparing his case. On December 11, 2009, plaintiff produced a clinic note for October 6, 2009. On December 17, 2009, plaintiff produced clinic notes for November 3, 2009 and December 8, 2009, which introduced to these proceedings a new physician, Janet Conway, M.D., and a new diagnosis requiring surgery on December 14, 2009.

The operative records, themselves, have not been produced.

Furthermore, plaintiff produced two <u>new</u> expert witness reports. On December 17, 2009, plaintiff produced a Rule 26(a)(2)(B) report of his retained, expert physiatrist Stephen Mills, M.D. based upon an examination of the plaintiff performed on the same date. In his report, Dr. Wills references the most recent knee surgery performed on December 14, 2009 and he newly diagnoses the plaintiff as suffering "a complex regional pain syndrome involving the left foot and ankle." Dr. Wills also newly opines that plaintiff suffers "chronic insomnia" from left lower extremity pain. Additionally, Dr. Wills opines that plaintiff "struggles with issues related to body image and sexual dysfunction" that require counseling.[1]

On December 22, 2009, plaintiff produced the expert report of Bradley Lamn, M.D. (dated December 15, 2009). In this two-page report, Dr. Lamn summarizes plaintiff treatment and surgeries through December 14, 2009. Dr. Lamn newly diagnoses "chronic regional pain syndrome" requiring physical therapy, rehabilitation (for three to six months) and pain management. Dr. Lamn also newly opines that plaintiff will need a "pain management physician" and "<u>multiple subsequent surgeries</u>." The doctor does not elaborate on these "multiple subsequent surgeries" and he does not estimate their costs.[2] These opinions are brand

---

[1] Plaintiff was deposed approximately one year ago. Since that deposition plaintiff has undergone left foot surgeries and has just recently gotten married. In light of Dr. Wills' opinions regarding "body-image issues" and "sexual dysfunction," defendant requests leave to depose the plaintiff on these topics.

[2] Plaintiff attached to his Opposition to Defendant's Second Motion In Limine as Attachment #3 an e-mail dated February 24, 2009 referencing "Hospital Fees Breakdown" in the amount of $39,796.30 for the "upcoming surgery." This breakdown of fees refers to the surgery that was performed on February 26, 2009. This breakdown of fees, <u>which is an estimate only</u>, does not in any way purport to be an estimate for these "multiple subsequent surgeries."

new to the case.

Plaintiff also admits that he has not accurately listed his medical expenses or that "some bills may have been omitted.". Plaintiff has not produced copies of the following bills: Prince George's Hospital Center-$85,808.31 (Plaintiff's Exhibit 37); Bill of Prince George's Hospital Center Critical Care Associates-$2,837.00 (Plaintiff's Exhibit 39); Bill of Conrad Dawson-$1,975.00 (Plaintiff's Exhibit 40); Bills of Premier Radiology-$2,729.00 (Plaintiff's Exhibits 41-45); Bill of Washington Hospital Center-$533,942.99 [3] (Plaintiff's Exhibit 46); Bill of Center Radiology-$447.00 (Plaintiff's Exhibit 48); and Bill of Washington Hospital Center Anesthesiology-$11,200.00 (Plaintiff's Exhibit 49). These undocumented expenses amount to 79% of plaintiff's claimed past medical expenses.[4]

Finally, plaintiff argues that he is entitled to present evidence of spoliation on the basis that, if the DVR equipment had been working properly, the video footage would have shown a view ahead of the bus and the speed of the bus.

**B.     THIS COURT SHOULD PRECLUDE ANY ARGUMENT, EVIDENCE, EXPERT TESTIMONY BY DAVID STOPPER AND JURY INSTRUCTION ON THE ISSUE OF SPOLIATION**

Plaintiff misses the point of defendant's argument. Metro Transit Police Officer Richard Ray was unable to retrieve any DVR footage because of a problem in the DVR's drive. The last recorded image was dated December 14, 2006 at 19:03 hours or three weeks before the accident. As such there was no "evidence" to preserve. Secondly, it is not a question of whether or not the DVR equipment was working or that WMATA acted negligently or that WMATA was aware of

---

[3] Plaintiff has provided Washington Hospital Center bills that total only $67,526.00.

[4] Without seeing these bills, defendant cannot even stipulate to their authenticity.

the problem (as a result of the lack of funding and manpower), there is no evidence that Metro Transit Police Officer Ray or any other WMATA personnel acted with evil intent, bad faith or willfulness in suppressing or withholding evidence.  No unfavorable inference arises when the circumstances indicate that the evidence in question has been lost or accidently destroyed or where the failure to produce it is otherwise properly accounted for.  Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3rd Cir. 1995).  An adverse inference may only be drawn if there is evidence of "evil intent, bad faith or willfulness."  Vick v. Texas Employment Commission, 514 F.2d 734,737 (5th Cir. 1975); Gumbs v. International Harvester, 718 F.2d 88, 96 (3rd Cir. 1983) (inference only arises when destruction was intentional and indicates fraud and desire to suppress the truth).  Finally, there is no evidence, whatsoever, or expert testimony (as a result of Mr. Stopper's failure to test the posted cameras' fields of view and angles of view, especially the field of view and angle of view of the bus' camera facing forward) that had the DVR worked properly the video footage would have depicted plaintiff in the roadway ahead of the bus.

**C.    THIS COURT SHOULD PRECLUDE ANY EXPERT TESTIMONY BY STEPHEN WILLS, M.D., ESTELLE DAVIS, PH.D. AND RICHARD LURITO, PH.D. THAT IS BASED ON PLAINTIFF'S PRE-FEBRUARY 26, 2009 MEDICAL HISTORY**

Dr. Wills's first Rule 26(a)(2)(B) report ante-dates plaintiff's left-foot surgery by four months. Dr. Wills' opinions as stated in this first report are either outdated (irrelevant) or incomplete.   Plaintiff tacitly agrees in his opposition by bootstrapping his argument that Dr. Wills be permitted to testify based on the doctor's second report of December 17, 2009.  Plaintiff ignores the facts that his retained physiatrist conducted a second physical examination months

after plaintiff had undergone physical therapy and subsequent to the removal of external fixator. Dr. Wills has rendered <u>new</u> opinions including that plaintiff suffers "a complex regional pain syndrome involving the left foot and ankle." Equally, important to this Court's consideration is Dr. Wills' prediction of future medical costs based on plaintiff's medical history <u>before</u> February 26, 2009. For example, Dr. Wills estimated fees for colostomy reversal, which was performed in May 2009, and a lifetime of pain medications, rehabilitation medicine, physical therapy, psychological counseling, which Dr. Wills is not an expert, and "light home management." Since February 26, 2009, plaintiff's rehabilitation has changed radically and there is <u>no</u> prediction of future medical costs by Dr. Wills (or Dr. Lamn) in light of plaintiff's changed condition.

Moreover, plaintiff represents for the first time in the history of this case that Dr. Davis will base her opinions on the <u>new</u> reports of Dr. Lamn (dated December 15, 2009) and Dr. Wills (dated December 17, 2009). Plaintiff has not produced a new report from Dr. Davis regarding these new opinions.[5] Finally, Dr. Lurito's bases his economic forecast on the pre-February 26, 2009 left foot surgeries/treatment predictions of Dr. Wills and Dr. Davis that are now outdated.

**D.  THIS COURT SHOULD PRECLUDE ANY EXPERT TESTIMONY BY BRADLEY LAMN, M.D. BASED ON HIS REPORT DATED DECEMBER 15, 2009.**

As stated above, Dr. Lamn's report dated December 15, 2009 contains <u>new</u> opinions,

---

[5]Although Dr. Lamn's report is dated December 15, 2009, it was not faxed by the doctor's office to plaintiff's counsel until December 22, 2009. Therefore, Dr. Davis has reviewed the reports of Dr. Lamn and Dr Wills in just this past week and it is represented that she has concluded that there is no change from her original report. To be fair to the defendant, plaintiff should provide a copy of this updated opinion pursuant to Rule 26(a)(2)(B), especially regarding plaintiff's inability to work as a barber when Dr. Lamn opines only that plaintiff will not be able to perform manual-type labor, *e.g.*, heavy lifting or heavy pushing/pulling.

especially the newly diagnosed "chronic regional pain syndrome" requiring physical therapy, rehabilitation (for three to six months) and pain management. Dr. Lamn also newly opines that plaintiff will need a "pain management physician" and "multiple subsequent surgeries" without any explanation, whatsoever, of what these surgeries consist of.

     Defendant is severely prejudiced by the expert opinions expressed by Dr. Lamn in his report dated December 15, 2009 and provided to the defendant just 11 business days before trial. Defendant has not had sufficient time to conduct discovery, including the deposition of Dr. Lamn and have a follow-up Rule 35 examination performed of the plaintiff. Defendant does not have sufficient time to present the reports of Dr. Bradley Lamn dated December 15, 2009 (and the report of Dr. Stephen Wills dated December 17, 2009) to defendant's expert witnesses for their consideration and response.

E.    **THIS COURT SHOULD PRECLUDE ANY EXPERT OPINIONS/TESTIMONY OF STEPHEN WILLS, M.D. BASED ON HIS PHYSICAL EXAMINATION OF THE PLAINTIFF ON DECEMBER 17, 2009 AND CONTAINED IN HIS REPORT DATED THE SAME DATE**

     As stated above, on December 17, 2009, plaintiff produced the second Rule 26(a)(2)(B) report of his retained, expert physiatrist Stephen Mills, M.D. based upon an examination of the plaintiff performed on the same date. In this new report, Dr. Wills references the most recent knee surgery performed on December 14, 2009 and he newly diagnoses the plaintiff as suffering "a complex regional pain syndrome involving the left foot and ankle." Dr. Wills also newly opines that plaintiff suffers "chronic insomnia" from left lower extremity pain. Additionally, Dr. Wills opines that plaintiff "struggles with issues related to body image and sexual dysfunction" that require counseling.

Dr. Wills is a physiatrist.  His ability to render expert testimony on plaintiff's sexual dysfunction, chronic insomnia and the need for psychological counseling is questionable.  Furthermore, unlike his first report, Dr. Wills does not address any of the costs associated with plaintiff's new regimen of care.  Accordingly, the basis of plaintiff's claim of future medical expenses is undocumented and unclear.

Once again, defendant has not had sufficient time to conduct discovery and have a follow-up Rule 35 examination performed of the plaintiff.  Defendant requests that Dr. Wills be precluded from testifying at trial and/or that the trial be continued to allow the defendant the needed discovery and a follow-up Rule 35 examination.

F.  **THIS COURT SHOULD PRECLUDE ANY EXPERT WITNESS OPINIONS/TESTIMONY REGARDING PLAINTIFF'S LEFT KNEE CONDITION INCLUDING BUT NOT LIMITED TO THE EXAMINATIONS (NOVEMBER 3, 2009 AND DECEMBER 8, 2009) AND SURGERY (DECEMBER 14, 2009) PERFORMED BY JANET CONWAY, M.D.**

On December 17, 2009, plaintiff produced the reports of a different, previously non-disclosed treating physician, Janet Conway, M.D., dated November 3, 2009 and December 8, 2009. [6]  These reports describe the new problem that plaintiff was having difficulty with his left knee <u>which required surgery to repair</u>.  These are the first such reports that deal with plaintiff's left knee problems and the need for left knee surgery.

Defendant is severely prejudiced by this last-minute disclosure of plaintiff's left knee problems and the need for surgery.  Defendant has not had sufficient time to conduct discovery and have a follow-up Rule 35 examination performed of the plaintiff.  Defendant requests that

---

[6] Plaintiff has not provided the operative report of Dr. Conway regarding the left knee surgery performed on December 14, 2009.

any expert opinions/testimony regarding plaintiff's left knee condition and surgery be precluded at trail and/or that the trial be continued to allow the defendant the needed discovery and a follow-up Rule 35 examination.

G. **THIS COURT SHOULD PRECLUDE PLAINTIFF'S PAST MEDICAL BILLS AND/OR FUTURE MEDICAL EXPENSES NOT OTHERWISE DOCUMENTED BY BILLS AND/OR SUPPORTED BY EXPERT WITNESS OPINION PRIOR TO DECEMBER 18, 2009**

On December 18, 2009 or three weeks before trial, plaintiff provided for the first time in the history of this case a complete itemization of his special or economic damages, despite the requirements of Rule 26(a)(1) and defendant's discovery requests. Plaintiff admits to not accurately listing his medical expenses and that "some bills may have been omitted." Plaintiff has failed to provide copies of his hospital and medical bills that amount to 79% of his claimed past medical expenses.[7] Equally important and for the first time in the history of this case, plaintiff itemized his future medical expenses and lost wages in the parties' Joint Pretrial Statement filed on December 18, 2009. The basis of this itemization is unclear insofar as that any expert testimony regarding future medical treatment and the costs associated therewith originated with Stephen Wills, M.D. in his first report that pre-dated the left foot surgeries beginning February 26, 2009. For example, there is no expert witness source, explanation and/or calculation for the claimed $457,268.00 in future medication expenses, $143,075.00 in future

---

[7] On December 21, 2009, defendant filed its Third Motion In Limine essentially advising plaintiff's counsel that the defendant did not have copies of plaintiff's Exhibits Nos. 37, 39, 40, 41, 42, 43, 44, 45, 46, 48 and 49, especially a copy of the plaintiff's Prince George's Hospital bill in the amount of $85,808.31 and his Washington Hospital Center bill of $533,942.00. One week later, in his opposition, instead of remedying the deficiency by simply providing copies of these bills, plaintiff totally ignores defendant's request for these bills.

physical therapy and $53,611.00 in psychological counseling. Also, there does not appear to be a concurring expert opinion regarding these future costs on the part of plaintiff's treating podiatrist, Dr. Lamn.

Once again, defendant is severely prejudiced by this last-minute disclosure of approximately $1.5 Million in mostly undocumented past medical expenses and unsupported future medical expenses. Defendant has not had sufficient time to conduct discovery and have a follow-up Rule 35 examination performed of the plaintiff in order to address the need for these future medical expenses. Defendant requests that any evidence of past medical bills and/or future medical expenses not otherwise documented by bills and/or supported by expert witness opinion before December 18, 2009 be precluded at trial. Alternatively, defendant requests that the trial be continued to allow for the needed discovery.

**H.    CONCLUSION**

It is axiomatic that, between plaintiff's Rule 26(a)(1) disclosures and plaintiff's discovery responses to defendant's discovery requests, any element of surprise or prejudice be eliminated. Needless to say, Fed. R. Civ. Pro. 26(e) requires that these disclosures be supplemented. Furthermore, when this Court entered its Pretrial Discovery Scheduling Order, the plaintiff was required to provide his Rule 26(a)(2) expert witness disclosures, first, so that defendant could prepare and develop its own expert witness opinions. Defendant relied upon this Court's Scheduling Order and filed its Rule 26(a)(2)(B) expert witness reports by October 28, 2009.

In the last two weeks, plaintiff has provided new treating physician reports, new expert witness reports and has failed to provide copies of 79% of his claimed past medical expenses. Moreover, there has been no reconciliation of plaintiff's pre-February 26, 2009 expert opinions

with post-February 26, 2009 expert opinions, especially regarding future treatment/"multiple subsequent surgeries" according to Dr. Lamn, the costs related thereto and plaintiff's ability (or inability) to barber.

Plaintiff claims that he will be prejudiced if the case is not tried on January 11, 2010, but he does not articulate a good faith reason. Plaintiff argues that the defendant is not prejudiced because the expert opinions will not change or that slight prejudice will result because "some bills may have been omitted." The disclosures required of Fed. R. Civ. P. 26, 33, 34 and 35 are designed so that <u>no</u> prejudice will result. Plaintiff ignores the fact that defendant's expert witnesses are professionals, themselves, and require time to review and respond to these new clinician notes and expert reports so that they, too, are well-versed in plaintiff's care and treatment. Furthermore, plaintiff tacitly agrees that medical bills need to be provided and that the defendant may be allowed a Rule 35 physical examination so long as it is rushed before trial. Nevertheless, additional time would inure to the benefit of the plaintiff so that he may continue to treat insofar as "he has not reached the full benefit of the aforementioned surgeries at this time and will continue to improve" according to Dr. Lamn's report of December 15, 2009.

In addition to preparing for trial during this holiday period, defendant has been compelled to file three motions in limine. Preclude the evidence and expert opinion testimony as requested and no prejudice results to the defendant; however, this does not bode well for the plaintiff. Alternatively, defendant has requested the extraordinary relief of a continuance so that all parties, their respective witnesses, experts and counsel may properly prepare and try this case.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

/s/ Nicholas S. Nunzio, Jr.
Nicholas S. Nunzio, Jr. #362578
Assistant General Counsel - WMATA
600 Fifth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 962-1028
Facsimile: (202) 962-2550
E-mail: nnunzio@wmata.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 29th day of December 2009, I will electronically file the foregoing Defendant Washington Metropolitan Area Transit Authority's Omnibus Reply to Plaintiff's Oppositions to defendant's Motions In Limine, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Terrell N. Roberts, III, Esquire
Roberts & Wood
6801 Kenilworth Avenue, Suite 202
Riverdale, MD 20737

/s/ Nicholas S. Nunzio, Jr.
Nicholas S. Nunzio, Jr. #362578
Assistant General Counsel - WMATA
600 Fifth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 962-1028
Facsimile: (202) 962-2550
E-mail: nnunzio@wmata.com