**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN ANTONIO EVANS** | : |
| | : |
| Plaintiff, | : |
| | : **Case No.  1:08-cv-01629-RMC** |
| **v.** | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| Defendant. | : |
| _____ | : |

**PLAINTIFF JOHN EVANS' OPPOSITION TO WMATA'S MOTION FOR
CLARIFICATION OF PREVIOUS IN LIMINE ORDERS AND/OR RENEWED
MOTION IN LIMINE**

Plaintiff, John Antonio Evans, by undersigned counsel, opposes the defendant

Washington Area Transit Authority's ("WMATA") motion for clarification of previous in limine

orders and/or renewed motion in limine [75].

Plaintiff's opposition rests upon the following grounds:

1.        Plaintiff intends to introduce evidence to show that WMATA acted with gross

indifference or reckless disregard to the need to preserve video recordings made by a digital

video recorder ("DVR") obtained from cameras on board its bus, which was involved in the

accident in question.  The bus' cameras would have provided video recordings to show precisely

where the bus was when the plaintiff was thrown off his motorcycle and on to the roadway.  This

evidence would have determined whether the bus driver was in a position to see and avoid

striking the plaintiff.  Because WMATA failed to preserve such evidence, plaintiff is entitled to

an instruction which allows the jury to infer that the missing evidence would have been favorable

to the plaintiff.  *See*, District of Columbia Standardized Civil Jury Instruction § 3.04 Failure to

Produce Stronger Evidence.  *Williams v. Washington Hospital Center*, 601 A.2d 28, 31-34 (D.C.

1991); *Battocchi v.Washington Hospital Center*, 581 A.2d 759 (D.C. 1990).

2.      The contention that the opinions of Estelle Davis, Ph.D (vocational expert) and

Richard Lurito, Ph.D. (economist) are "out of date, lack foundation and irrelevant" is without

merit.  Dr. Davis has had the benefit of reviewing plaintiff's treatment in 2009 and plaintiff's

deposition in November 2010.  Her opinion as to plaintiff's disability and loss of earning

capacity are not changed.  Further, Dr. Lurito's opinions remain the same, except that damages

for pain medications will be substantially reduced.  This is not prejudicial to WMATA, inasmuch

as it reduces the amount of the plaintiff's economic claim for future medical expenses.

3.      WMATA's requests to limit Dr. Bradley Lamm's testimony to the date of his last

office visit with plaintiff on October 6 2009 and Dr. Janet Conway's testimony to the date of

January 10, 2010.  However, plaintiff's counsel has provided WMATA's counsel with progress

notes of each doctor through October 26, 2010, the last date that plaintiff saw each doctor.  Thus,

there is no basis to limit the testimony of either doctor as requested.  Furthermore, Dr. Lamm

testified at deposition on May 23, 2011 in order to preserve his testimony for trial and Dr.

Conway is scheduled to testify for the same purpose on June 1, 2011.

4.      Dr. Stephen Wills is physiatrist and retained expert witness who will testify to

the plaintiff's disability and need for medical care.  Defendant seeks to limit Dr. Wills' testimony

to the date of his last report, March 5, 2010.  At that time, plaintiff had completed his surgery to

correct his left foot deformity and removal of abnormal bone formation on the left knee.  Dr.

Wills was in a position at that time to give opinions on plaintiff's disability and need for medical

care in the future.  Dr. Wills has had the benefit of reviewing the second deposition of the

2

plaintiff which was taken on November 15, 2010.  The only opinion which may be altered is his

opinion as to plaintiff's need for pain management and medication.

      5.      Plaintiff has provided WMATA with records from FCI Morgantown for the

plaintiff's period of incarceration at that facility in 2010. The records do not disclose any care

except for an x-ray of the left leg, a blood test and a refusal by the patient to take amitriptyline.


                            _____/s/_____
                            Terrell N. Roberts, III, #965061
                            Attorney for Plaintiff
                            6801 Kenilworth Avenue, Suite 202
                            Riverdale, MD 20737
                            (301) 699-0764
                            E-mail:  troberts@robertsandwood.com

### CERTIFICATE OF SERVICE

      I certify that I mailed a copy of the foregoing, together with supporting memorandum of

points and authorities, this 25th day of May, 2010 to:

                        Nicholas S. Nunzio, Jr. #362578
                        Assistant General Counsel-WMATA
                        600 5th St., N.W.
                        Washington, D.C.  20001


                          _____/s/_____
                          Terrell N. Roberts, III

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN ANTONIO EVANS** | : |
| | : |
| Plaintiff, | : |
| | : Case No.  **1:08-cv-01629-RMC** |
| **v.** | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| Defendant. | : |
| _____ | : |

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO
THE DEFENDANT WMATA'S MOTIONS IN LIMINE**

Plaintiff, John Antonio Evans, by undersigned counsel, submits the following

memorandum in support of his opposition to the defendant Washington Area Transit Authority's

("WMATA") motions in limine [75].

> **I.    The Testimony and Evidence with respect to DVR is Properly Admissible to
> Support an Adverse Inference that the Evidence Which the DVR Would
> Have Revealed Would Have Been Adverse to the Defendant.**

At trial, plaintiff will offer evidence as to what information a working digital video

recorder ("DVR") on the bus involved in the subject accident would have shown.  There are five

on board cameras on the bus.  One camera "is outside of the bus above the front door and the

view is along the right side of the bus."  Richard Ray deposition, p. 10, l.  Another camera is

"inside the bus mounted on the windshield pointing forward from the windshield."  Id., p. 10, l.

9-12.  These cameras would have provided crucial evidence as to how the accident happened.

Such evidence would have shown what was ahead of the bus and what was to the right of the bus

before and during the time that the bus ran over the plaintiff.  For example, if the plaintiff was

4

ahead of the bus when his motorcycle struck the Suburu, it would have shown that.  It could also determine what the bus' movements were at that time, i.e., was it stopped, moving, and if so, how fast.  Such information would be virtually dispositive of the liability issues in this case.

Officer Richard Ray was a WMATA evidence technician who testified that it was his job to retrieve video footage from buses.  He testified that he came to the scene of the accident in this case and recovered the hard drive from the DVR in the bus.  He testified that he brought the equipment to a facility where he attempted to download the images from the DVR.  He was unsuccessful.  He testified: "As far as I could tell, the drive was corrupted.  I couldn't open the video footage, but I could see the files."  Id., p. 12, l.s 11-13.  Asked if he requested someone else to try to recover the video footage, Ray testified another officer gave him some suggestions, but he still could not open the video files.  Id., p. 13., l.13.  Ray could not explain why the video recordings could not be retrieved.  He testified that he did not take any further steps to retrieve the video recordings.  Ray testified that the DVR hard drive was no longer available for inspection because it was reformatted and placed back onto the bus and put back in use.

Officer Ray testified that he is unable to recover video recordings in one out of every three cases.  Id., p. 18. He testified that it happens quite often that the bus operator will check the equipment to ensure that it is working, but the equipment is not working, i.e., recording.  Id. P. 16.  Asked whether anyone in WMATA identified the problem, Ray testified, id., p. 17, l.s 4-9:

> From my experience what it was is that the Authority didn't have a – what's the word I'm looking for – maintenance contract to keep the video systems operating, someone to check the video systems.  So if one broke down, we wouldn't know it was broken or not working or until we went to retrieve a video.

Ray testified that he made his supervisor aware of the problem. Id., p. 18, l.s 2-3.

David Stopper, plaintiff's accident reconstruction expert, was asked about the DVR at his deposition.  Stopper testified that the bus operator testified that he checked the DVR equipment and that the equipment showed a green light indicating it was operable.  According to Stopper, it was entirely possible that the video equipment recorded the incident and that a person with more expertise should have examined the computer hard drive to try to recover the video recordings.  Alternatively, plaintiff should have been given an opportunity to have an expert examine the hard drive.  He testified that the video recordings would have been critical to the determination whether the bus operator had an opportunity to see and avoid striking plaintiff.

*Battocchi v. Washington Hosp. Center,* 581 A.2d 759 (D.C.1990) established the controlling law regarding the loss of evidence in a civil case. In *Battocchi,* the Court of Appeals in the District of Columbia announced a standard by which a trial court could determine whether an adverse inference instruction is an appropriate remedy. Analyzing the doctrine of spoliation, the court distinguished the situation where destruction of the evidence is not intentional or deliberate but rather a "failure to preserve evidence." *Id.* at 765-67. Acknowledging, however, that this jurisdiction accepts the rule that a fact-finder may be permitted to draw an adverse inference from the failure of a party to preserve evidence within his exclusive control, the court held that in certain situations the trial court is required to give the instruction. *Id.* at 766-67. "[U]pon a finding of gross indifference to or reckless disregard for the relevance of the evidence to a possible claim, the trial court must submit the issue of lost evidence to the trier of fact with corresponding instructions allowing an adverse inference." *Id.* at 767. Where the negligence is not intentional or reckless, the court is accorded discretion in determining whether to give an adverse inference instruction.  *Id.*

6

The evidence in this case demonstrates that WMATA acted with gross indifference or reckless disregard to the preservation of critical evidence in its possession and under its control. The possibility that the video recording from the DVR could have been recovered was lost when WMATA reformatted the DVR computer and placed it back in the bus for taping over.  Stopper testified that other computer experts should have examined the hard drive.  We know from experience that computer experts are capable of retrieving information and data from computers which to a layman appear hopelessly lost.  Based upon the fact that the bus operator testified that the DVR equipment was working before he started his route on the date of the accident, there is every reason to believe that a through examination would have revealed the critical video footage.

Alternatively, if one out of every three recorders do not work, it demonstrates gross indifference to whether DVR's on the buses worked or not and a reckless disregard for the need to preserve important evidence.  Thus, plaintiff is entitled to a jury instruction which carries the negative inference that the video footage, if it had been preserved, would have been unfavorable to WMATA.

_____/s/_____
Terrell N. Roberts, III,
Attorney for Plaintiff
6801 Kenilworth Avenue, Suite 202
Riverdale, MD 20737
Telephone: (301) 699-0764
Facsimile: (301) 699-8706
E-mail:  troberts@robertsandwood.com