UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN ANTONIO EVANS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-1629 (RMC) |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

John Antonio Evans was very badly injured after he struck a stopped car while riding his motorcycle on a city street, was thrown forward onto the road, and was then struck by a passing bus operated by the Washington Metropolitan Area Transit Authority ("WMATA"). Mr. Evans presented his case on liability, bifurcated from damages because of the unavailability of certain witnesses, to a jury in the District of Columbia. After deliberating for approximately seven hours, the jury returned a verdict finding that WMATA's driver was negligent and that Mr. Evans was contributorily negligent, but that Mr. Evans had failed to prove two of the four elements of the common law doctrine of "last clear chance." As a result, despite the jury's finding that WMATA was negligent, Mr. Evans collected no damages. Mr. Evans now moves for a new trial. He argues that the "last clear chance" doctrine was improperly applied in this case, the jury's verdict is internally inconsistent, WMATA's counsel made prejudicial statements during closing argument, and the Court wrongly refused to admit evidence that supported his

case. None of the arguments made by Mr. Evans is sufficient to warrant a new trial. The motion will be denied.

## I. FACTS

There is no dispute that the evidence at trial showed the following. On January 4, 2007, Mr. Evans was operating his motorcycle at a higher speed than rush hour traffic would allow in the left southbound lane of Martin Luther King Avenue, S.E. in the District of Columbia. At that time, a vehicle driven by Vincent Fong had been stopped for almost a minute to make a left-hand turn at the intersection of Pomeroy Road. Mr. Evans came up to Mr. Fong's vehicle, was unable to pass it, and collided with the rear of the vehicle. The force of impact ejected him from his motorcycle to the front right side of Mr. Fong's car. A WMATA bus then struck Mr. Evans, very badly injuring him. Plaintiff admits that "[i]t is . . . clear that WMATA's negligence did not cause plaintiff to be put into that position" on the roadway to be struck. Pl.'s Reply to Def.'s Opp'n to Mot. for New Trial [Dkt. # 104] at 5 ("Pl.'s Reply"); *see also* Pl.'s Mot. for New Trial [Dkt. # 92] ¶ 3 ("Pl.'s Mot.") ("[I]t was clear that the reason that the plaintiff was thrown off his motorcycle had nothing to do with the defendant's negligence. . . [I]t is clear that the defendant's negligence occurred after the plaintiff was already thrown off his motorcycle.").

The jury was presented with the testimony of nine lay witnesses by way of live courtroom testimony, videotape deposition and witness statement, as well as statements made by Mr. Evans in medical records. The parties both presented expert opinion evidence by accident reconstructionists. In addition, many photographs of the accident scene and the motor vehicles were introduced and scale drawings of the intersection were used by the accident reconstructionists during their testimony. After deliberations, the jury provided answers to

specific, numbered questions on a special verdict form in the following manner:

1. Do you find that plaintiff John Antonio Evans has proven by a preponderance of the evidence that the defendant WMATA was negligent and such negligence proximately caused the plaintiff's injuries?[1]

Yes <u>X</u>   No ___

2. Do you find that defendant WMATA has proven by a preponderance of the evidence that plaintiff John Antonio Evans was contributorily negligent?

Yes <u>X</u>   No ___

3. Do you find that the plaintiff John Antonio Evans has proven by a preponderance of the evidence each of the following:

    a. That he was in a position of danger caused by the negligence of both himself and the defendant?

Yes ___   No <u>X</u>

    b. That he was unaware of the danger or unable to remove himself from the position of danger?

Yes <u>X</u>   No ___

    c. That the defendant was aware, or by the exercise of reasonable care should have been aware of plaintiff's danger and obliviousness or inability to extricate himself from danger?

Yes <u>X</u>   No ___

---

[1] A finding that the bus driver operated the bus negligently was a finding against WMATA. WMATA is liable for the torts of its employees. *See* Act of Nov. 6, 1966, Pub. L. No. 89-774, 80 Stat. 1324 (codified at D.C. Code § 9-1107.01 (2001)).

        d.        That the defendant had sufficient time and opportunity, by the exercise of reasonable care, to avoid striking the plaintiff, and the defendant failed to do so?

Yes ___ No X

Because Mr. Evans was found negligent by the jury, under D.C. law, he could only be awarded damages if he proved that WMATA had the last, clear chance to avoid the accident.[2] However, the jury's answers to questions Nos. 3a and 3d barred such a recovery.

## II. LEGAL STANDARD

A court has discretion to grant a new trial "after a jury trial, for any reason for which a new trial has . . . been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(a). Motions for new trial must establish a clear and obvious error of law or fact. *Nyman v. Federal Deposit Ins. Corp.*, 967 F. Supp. 1562, 1569 (D.D.C. 1997). A new trial is appropriate "where the court is convinced the jury verdict was a seriously erroneous result and where denial of the motion will result in a clear miscarriage of justice." *Id.* (citation omitted).

Errors that may justify a new trial include a jury verdict against the weight of evidence. *Id*. However, "'[i]ntru[sion] upon the rightful province of the jury is...highly disfavored...[t]he jury's verdict must stand unless the evidence, together with all inferences that can reasonably drawn therefrom is so one-sided that reasonable [people] could not disagree on the verdict.'" *Smith v. Dist. of Columbia*, 413 F.3d 86, 97 (D.C. Cir. 2005) (alterations in

---

[2] D.C. law applies to this case because the Court sits in the District of Columbia and the accident occurred here. Although federal jurisdiction arises by virtue of an interstate compact, the Washington Area Transit Authority Compact, local law defines liability. *See* Act of Nov. 6, 1966, Pub. L. No. 89-774, 80 Stat. 1324 (codified at D.C. Code § 9-1107.01 (2001)) (stating that the Authority's liability is to be governed by "the law of the applicable signatory (including rules on conflict of laws)").

original) (quoting *Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir.1994)).  When a party claims that a jury's verdict is internally inconsistent, the Court has a special obligation to view the evidence in a manner that reconciles the verdict, if possible.  *Hundley v. Dist. of Columbia*, 494 F.3d 1097, 1102 (D.C. Cir. 2007).  If the jury's answers to questions on a verdict form cannot be reasonably reconciled with the record, a new trial is warranted.  *Id*.

An error in admitting or excluding evidence that affects a party's substantial rights may also be grounds for granting a new trial.  *See* FED R. CIV. P. 61; *Nyman*, 967 F. Supp. at 1569.  For an error to affect substantial rights, it "'must have been prejudicial:  It must have affected the outcome of the...proceedings.'"  *Muldrow (Ex rel. Estate of Muldrow) v. Re-direct, Inc.,* 493 F.3d 160, 168 (D.C. Cir. 2007) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).  Otherwise, a court may disregard the error.  *See* FED. R. CIV. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

### III. ANALYSIS

Mr. Evans argues that:  1) the law of "last clear chance" was wrongly applied; 2) the jury's answers to verdict form questions Nos. 3c and 3d are inconsistent under the factual scenarios presented by the evidence, and that its answer to No. 3d is inconsistent with its answer to question No. 1; 3) defense counsel made prejudicial statements during closing arguments; 4) and the refusal to allow Mr. Evans to introduce evidence regarding cameras on the bus and refusal to instruct the jury to draw a negative inference against WMATA based upon its "failure to preserve evidence" from such cameras led to an erroneous verdict.  Pl.'s Mot. ¶ 9.  Each of these arguments will be addressed in turn.

### A. Last Clear Chance

"Last clear chance" is a common law doctrine, developed to mitigate the initial harshness of the common law rules of negligence, particularly the rule that plaintiff's contributory negligence is an absolute bar to recovery in a negligence action, which is the law in the District of Columbia. *See Felton v. Wagner*, 512 A.2d 291, 296 (D.C. 1986). "Last clear chance" provides an avenue to overcome this hurdle. Where both parties were negligent, a defendant may be held liable if the "superior opportunity to avoid the accident" was his. *Phillips v. D.C. Transit Sys., Inc.*, 198 A.2d 740, 741-42 (D.C. 1964).

The law of "last clear chance" in the District of Columbia requires proof that:

> (1) . . . the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) . . . the plaintiff was oblivious to the danger, or unable to extricate [himself] from the position of danger; (3) . . . the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of [his] oblivion to it or [his] inability to extricate [himself] from it; and (4) . . . the defendant, with means available to [him], could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate [himself] from it but failed to do so.

*Belton v. Washington Metro. Area Transit Auth.*, 20 F.3d 1197, 1199 (D.C. Cir. 1994) (quoting *Robinson v. Dist. of Columbia*, 580 A.2d 1255, 1258 (D.C. 1990) (all emphases deleted). "The District has hewed to this four-requirement formula in a long stream of cases." *Id.* at 1199-1200 (citing cases). Mr. Evans failed to provide sufficient proof of two of these requirements at trial: 1) that a primary act of negligence by WMATA placed him in a situation of peril; 2) that there was sufficient opportunity for the driver of the bus to avoid striking him. As a result, he could not avail himself of the protection of the "last clear chance" doctrine and could not collect

damages because of his own contributory negligence. *See Phillips*, 198 A.2d at 742.

Mr. Evans would have the law regarding "last clear chance" interpreted differently so that his own negligence, that resulted in his ejection from his motorcycle into the path of the WMATA bus, is ignored. He argues he may recover because the jury found WMATA guilty of negligence that occurred subsequent to his own negligence "severing [his] contributory negligence." Pl.'s Reply at 5; *see* Pl.'s Mot. ¶ 3. This interpretation is at odds with D.C. law. The jury found that Mr. Evans was in a position of danger due to his own antecedent negligence, that is, no negligence on the part of WMATA initially placed him in peril. Under the D.C. law of "last clear chance," Mr. Evans cannot collect damages because he is the sole party responsible for his initial danger.

Mr. Evans rebuts this precedent, citing *Bowman v. Redding & Co.*, 449 F.2d 956, 970 (D.C. Cir. 1971) and *Drapaniotis v. Franklin*, 504 F.2d 236, 237-38 (D.C. Cir. 1974), both of which rejected any requirement that a defendant be found guilty of antecedent negligence. These cases however were issued "*after* February 1, 1971, the date on which, by virtue of the District of Columbia Court Reorganization Act, Pub. L. No. 91-358, 84 Stat. 475, 667, [the D.C. Circuit] ceased to an authoritative expositor of District law. . . . Even if any pre-February 1, 1971 decisions of this circuit supported a tendency to dispense with antecedent negligence, the District's later assertion of the requirement in an *en banc* decision, *WMATA v. Jones*, 443 A.2d [45, 51 (D.C. 1982] would control." *Belton*, 20 F.3rd at 1200.

Once the jury found Mr. Evans contributorily negligent, his only opportunity for recovery was under the doctrine of "last clear chance." The doctrine was applied correctly under D.C. law, and he failed to persuade the jury on two points critical to its application.

### B. Inconsistent Verdicts

Mr. Evans claims that the jury's verdict was impossibly inconsistent because, to answer question No. 3c on the verdict form affirmatively, the jury must have found the bus driver to be "in a position in which he could have become aware of the plaintiff's position of danger." Pl.'s Mot. ¶ 4. He contends that having reached such a conclusion under the factual scenarios presented, the jury could not have reasonably found that WMATA did not have sufficient distance and time to avoid striking Mr. Evans on the road in response to question No. 3d. *Id.* Mr. Evans further argues that the jury's negative answer to No. 3d on the verdict form is inconsistent with its positive answer to question No. 1 to the effect that Defendant was negligent and that such negligence proximately caused Mr. Evans' injuries. *Id.* ¶ 6.

Mr. Evans states that no coherent interpretation of the evidence would allow the jury to answer Nos. 3c and 3d in the manner in which they did. In order to answer No. 3c positively, he argues the jury could have only given weight to witness testimony that supported the conclusion that the WMATA bus driver had time to both observe and avoid Mr. Evans. Mr. Evans asserts that testimony that the bus was stopped before it struck Mr. Evans or that the bus was traveling at 2-3 miles per hour should be interpreted to mean that there was enough time for the driver to see and avoid him on the roadway. He further argues that testimony by the bus driver that the bus was traveling at approximately 20 miles per hour could not have been credited by the jury in making its findings. Pl's. Mot. ¶ 4.

There are more reasonable interpretations of the trial record than just those posited by Mr. Evans. For instance, the driver testified that he saw the motorcycle lying on the road behind him but did not stop to find out where the driver, Mr. Evans, had landed. Based on this

8

and regardless of conflicting testimony on the bus's speed, the jury might have found that the driver was negligently inattentive but still credited WMATA's expert's testimony that the momentum and weight of the bus prevented the driver from stopping before striking Mr. Evans.

The jury's answers to No. 1 and 3(d) also do not lack consistency as Mr. Evans alleges. Mr. Evans argument that "[a] person is not negligent if there is nothing which that person can or should do to avoid causing an accident," Pl.'s Reply at 2, misinterprets the function of No. 3d and the application of the "last clear chance" doctrine. The doctrine only comes to bear when it has *already* been established that a defendant was negligent, as the jury clearly found in its answer to No. 1, but, because a plaintiff was also negligent, the defendant was not liable. "Last clear chance" opens the door for recovery to a plaintiff when, the defendant was aware of and could have stopped the injury. *See Phillips*, 198 A.2d at 742 (describing a scenario where the "last clear chance" doctrine applies). Question No. 3d asked the jury whether avoidance was possible, and, therefore, the doctrine could apply; it was not connected to the question of WMATA's negligence as Mr. Evans argues. As a result, the jury's findings that WMATA was negligent but could not have avoided striking Mr. Evans are not inconsistent.

Regardless of these findings, the disputes surrounding the jury's answers to these questions would still not merit a new trial because the jury's answers to No. 3c and 3d would not materially change the result of trial. The jury found that Mr. Evans was contributorily negligent and that WMATA's negligence did not put Mr. Evans in a position of danger, a fact Mr. Evans acknowledges. These findings alone would bar the application of the "last clear chance" doctrine under D.C. law and any collection of damages by Mr. Evans.

### C. Prejudicial Statements in Closing

Mr. Evans argues that counsel for WMATA made prejudicial statements during closing argument. First, Mr. Evans attacks references to cameras made by WMATA's counsel because he himself was not able to make arguments regarding the presence of cameras on the bus to the jury. Second, he argues that references to the effect of the accident on the WMATA bus driver created a false impression that the verdict would adversely affect him.

The issue of what arguments could be presented to the jury regarding the bus's camera system was vigorously contested during pretrial proceedings. Over Mr. Evans' repeated objections, the Court ruled that he could not argue that the absence of a video recording of the accident from cameras on the bus necessarily meant that WMATA could be accused of spoliation or suffer an adverse inference. During his deposition, the driver of the bus testified that he thought the digital video recorder ("DVR") equipment that maintained recordings from the cameras on the bus was operating on the day of the accident because its light was on. Mem. P. & A. in Supp. of Mot. to Proffer Evidence in Supp. of a Missing Evidence Instruction [Dkt. # 89] at 3. WMATA's designated maintenance agent testified at deposition that, two weeks after the accident, a technician diagnosed that there was no electrical power to the equipment. *Id.*, Ex. 4 [Dkt. # 89-4] at 40 (Dep. of Allan Nabb). He further testified that, in general, DVR systems on WMATA's buses were not properly maintained because of a lack of resources. *Id.*, Ex. 4 at 26. WMATA's evidence technician was unable to extract any video, and the last available image on the equipment was from approximately three weeks before the accident. *Id.*, Ex. 2 [Dkt. # 89-2] at 15 (Dep. of Officer Richard Ray). Mr. Evans moved in limine to have the Court instruct the jury on adverse inference on the theory that the video, if available, would have demonstrated

WMATA's negligence.  The Court denied this motion, finding that there was not sufficient evidence that the video ever existed or of any act to destroy it.[3]  The motion was again advanced

---

[3]  At a pre-trial hearing on May 26, 2011, the Court ruled:

> There's been a lot of argument between you [counsel] as to evidence of spoliation.  I will not allow you to present evidence of spoliation, not by experts, not by anybody. . . .
>
> There's no evidence that the DVR video is not available because of any intentional or mal[icious] act on the part of Metro.  Whether or not Metro should have more operable video cameras in their buses, that's an entirely different issue.  Metro cannot be found liable to Mr. Evans because it doesn't maintain it's [sic] video cameras well enough.
>
> The video camera did not cause or it's [sic] omission did not cause the accident.  So therefore, it's [sic] presence or omission is just the presence or omission of a useful, potentially useful piece of, data piece, a piece of information, pieces of information not available, not available for reasons that are not attributable to liability or lack of liability.
>
> And you certainly, I cannot allow an argument for an adverse inference that had there been video cameras available operating, those video cameras would have shown something that was to the plaintiff's benefit and to Metro's detriment.  Who knows what it would have shown.
>
> The jury is going to decide that based on the testimony of the witnesses.  Their best judgment as to probabilities and credibilities and all the rest of it as to how that all comes out.
> . . .
>
> So the [alleged] recklessness of not having a record to prove one way or the other how the plaintiff was injured did not contribute to his injuries and cannot be used as a basis to argue Metro must be liable for those injuries because they don't have a video to disprove it.
> . . .
> I just don't think that I logically or legally can under this circumstance make the connection you choose to make as to the connection between the video presence or absence and the injuries and the liability for the injuries without some evidence of an intentional spoliation and you have none.
> ...

and again denied before trial.

During closing argument, WMATA's counsel made a reference to cameras because people are "imperfect recording devices of real time." Def.'s Opp'n to Mot. for New Trial [Dkt. # 102] at 15. In rebuttal, counsel for Mr. Evans argued that WMATA did not prove that cameras on the bus did not exist; the Court admonished counsel not to continue that line of argument because it was not consistent with its pretrial ruling.

Mr. Evans claims these statements were prejudicial and led to an erroneous verdict. The Court does not find that these statements were prejudicial in their nature or in their effect on the jury. The reference to people having incomplete memories, unlike cameras, was presumably designed to address the differing testimonies of witnesses as to the sequence of the accident events; given the differing accounts the jury heard, there was nothing untoward about the comment. Its inclusion of a reference to cameras gave it no greater weight. Furthermore, it is not clear how counsel's comment would have had any effect on the jury's determinations regarding the negligence of the parties. Finally, Mr. Evans was not prejudiced by the Court's ruling during both pretrial and trial that he could not make arguments regarding the presence of cameras on the bus. The comment by WMATA's counsel was not related to this issue.

Counsel for WMATA also referenced the impact of this case on the bus driver during closing argument. Counsel for Mr. Evans objected at this time, and the Court instructed

---

> [Y]ou have no evidence that it even existed. You see, it's not as if there were spoliation because we don't know and the evidence would suggest that it's at least 50/50 that it didn't exist ever. That it never videoed this accident. Never. And so it's not as if you have evidence that it did exist and if Mr. Ray were more talented he might have extracted it.

Transcript of Pretrial Conference at 51-57, *Evans v. Washington Metro. Area Transit Auth.*, No. 8-1629 (D.D.C. May 26, 2011).

the jury that there was no evidence offered on this point. It is assumed the jury followed the Court's instruction. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Notably, the jury concluded that the driver negligently operated the bus, indicating no effect on the jury due to counsel's comments.

Neither of the remarks by WMATA's counsel caused prejudice to Mr. Evans because the jury's verdict was not influenced by them. As a result, Mr. Evans' "substantial rights" were not adversely affected within the meaning of Federal Rule of Civil Procedure 61. Any error that may have occurred when the jury heard these statements during closing argument was harmless, and there are no grounds for a new trial.

**D. Evidence of Alleged Spoliation.**

Finally, Mr. Evans renews his claim that he was entitled to introduce evidence regarding the existence of cameras on the bus and to an adverse inference against WMATA because its personnel allegedly destroyed video footage contained in the DVR system. This contention has twice been rejected, and the Court does not pursue it further.

## IV. CONCLUSION

The motion for a new trial [Dkt. # 92] provides no basis to second guess the jury's verdict and must be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: October 6, 2011                                /s/
                                                     ROSEMARY M. COLLYER
                                                     United States District Judge